

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CR 02-30017 |
| -vs- | OPINION AND ORDER |
| GARY W. FLUTE, SR., | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendant was convicted of two counts of sexual abuse of a minor, two counts of aggravated sexual abuse of a child, and one count of incest, all involving his daughters. He was sentenced on February 26, 2003, to a total sentence of 372 months imprisonment. He appealed his convictions and sentences to the United States Court of Appeals for the Eighth Circuit and the Eighth Circuit affirmed on April 5, 2004. United States v. Flute, 363 F.3d 676 (8th Cir. 2004). The mandate was filed on November 14, 2005. Certiorari was denied by the United States Supreme Court on March 6, 2006.

Defendant filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 on March 9, 2007. His pleading was signed on March 6, 2006, and he states that he placed it in the mail that date. The Eighth Circuit has held that the prison mailbox rule announced in Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), applies to a pro se prisoner's petition for a writ of habeas corpus and therefore, for the purposes of applying the one year statute of limitations in 28 U.S.C. § 2244(d)(1), the petition "is filed on the date it is delivered to prison authorities for mailing to the clerk of the court." Nichols v. Bowersox, 172 F.3d 1068, 1077-78 (8th Cir. 1999). That rule is equally applicable to the one year statute of limitations established for § 2255 motions. Moore v. United States, 173 F.3d 1131, 1135 (8th Cir. 1999). It appears that the petition is timely.

Defendant initially submitted his motion, along with Appendixes A (a copy of the Eighth Circuit opinion), B (my order denying his motion for a judgment of acquittal), C (letter from the Supreme Court as to the denial of his petition for a writ of certiorari), D (order from the Eighth Circuit denying a petition for re-hearing), E (a copy of his Eighth Circuit brief), and F (consisting of exhibits I-X). He also filed a sixty-one page brief in support of his motion to vacate. Defendant contends (1) that he was denied the right to counsel of choice, (2) he was not advised of his Miranda rights upon arrest, (3) he was denied the right to effectively cross-examine the victims, and (4) he was denied Due Process in connection with a Batson challenge. He raises various other claims within his arguments as to his numbered claims. I have conducted an initial consideration of the motion, as required by Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

## I. Right to Counsel.

### A. Right To Counsel of Choice.

Defendant was indicted on February 22, 2002. He claims that he was, on that date, in the custody of the State of South Dakota. He pleaded guilty to a state law insufficient funds checks charge and was sentenced in Brule County on February 7, 2002, to four and one half years custody, all such custody suspended upon conditions including that he spend 60 days in the Brule County Jail in Chamberlain. He was given credit for 28 days. He thus had completed the custodial portion of his state sentence when he was taken into federal custody in Chamberlain on March 11, 2002. Defendant contends that his right to counsel of choice was violated because, since he had no notice of the filing of federal charges, he spent his federal income tax refund prior to his arrest on federal charges, and was therefore unable to afford to retain counsel of choice. Defendant contends that he was entitled to notice of the filing of the indictment and failure to do so violated his Sixth Amendment right to counsel of his choosing.

"A litany of federal case law recognizes that the Sixth Amendment guarantees the right to counsel 'at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected.'" Scott v. United States, 473 F.3d 1262, 1264 (8th Cir. 2007) (*quoting* Mempa v. Rhay, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967)). "The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the

2

criminal process." Iowa v. Tovar, 541 U.S. 77, 80-81, 124 S.Ct. 1379, 1383, 158 L.Ed.2d 209 (2004). Thus, once criminal proceedings have commenced against an individual, "the Sixth Amendment forbids *all* efforts to elicit information from him in the absence of counsel, regardless of whether he is in custody." Wyrick v. Fields, 459 U.S. 42, 54, 103 S.Ct. 394, 399, 74 L.Ed.2d 214 (1982).

The Sixth Amendment right to counsel attaches upon the initiation of formal charges, in this case, upon the filing of the indictment. Kirby v. Illinois, 406 U.S. 682, 689-90, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). Even though the right to counsel attached on February 22, 2002, the time period between indictment and arrest is not, in and of itself, a critical proceeding wherein the defendant had the right to have counsel "present." "[T]he test for determining whether a particular proceeding is itself a critical stage is 'whether the presence of . . . counsel is necessary to preserve the defendant's basic right to a fair trial . . .'" United States v. Blum, 65 F.3d 1436, 1441 (8th Cir. 1995) (*quoting* United States v. Wade, 388 U.S. 218, 227, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967)). Absent an attempt to question the defendant in the intervening period before indictment and arrest, there was no Sixth Amendment violation.

Defendant contends that he was entitled to notice that an indictment had been filed so that he could have secured counsel of his own choosing, while he could still afford to do so. "A non-indigent criminal defendant's Sixth Amendment rights encompass the right to be represented by the attorney selected by the defendant." United States v. Gonzalez-Lopez, 399 F.3d 924, 928 (8th Cir. 2005). Defendant was not denied the right to employ counsel of his own choosing. He filed an affidavit claiming to be indigent and requested that counsel be appointed for him. There is no law or rule requiring notice to a defendant that he has been indicted by the grand jury. To the contrary, in the interests of the safety of the arresting officer, no notice is generally provided to the defendant. However, pursuant to a standing order entered on January 26, 2000, indictments are open to public inspection upon return by the grand jury.

Pursuant to Fed. R. Crim. P. 9, a warrant issued upon an indictment is served in the same manner as a warrant upon a complaint - a copy of the warrant setting forth the charge must be shown to the defendant. There is no other requirement anywhere in the law that the defendant be given personal notice of the return of an indictment prior to his arrest.

3

### B. Right to the Effective Assistance of Counsel.

Defendant contends that he was denied the effective assistance of counsel at his pre-trial bond hearings, resulting in his detention pending trial. Relief under 28 U.S.C. § 2255 is limited to those in custody pursuant to a federal court sentence who claim "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Section 2255 motions attack the legality of the order under which the defendant is currently detained. Defendant is no longer in custody pursuant to the pre-trial order of detention. Claims relating to pre-trial bail are not cognizable under § 2255. See Kett v. United States, 722 F.2d 687, 690 (11th Cir. 1984) and Traber v. United States, 466 U.S. 483, 485 (5th Cir. 1972).

Defendant contends that counsel provided ineffective assistance at the pre-trial bond stage in that she failed to timely present evidence in favor of his release and agreed to a 45 day continuance of his pre-trial detention hearing without his consent. He contends that this ineffective assistance prevented him from seeking counsel of his own choosing because he was denied bond. As set forth above, defendant stated that he was indigent - that he could not afford to hire his own attorney - and requested the appointment of counsel at his initial appearance on March 12, 2002. An attorney from the Federal Public Defender's office was appointed that same date.

At the defendant's initial appearance, the government moved for a continuance of the detention hearing. The government, upon a proper showing, is entitled to such a continuance, with or without the defendant's consent. 18 U.S.C. § 3142(f). The detention hearing was held on March 18, 2002, at which time the Magistrate Judge ordered the defendant detained. Counsel for defendant filed a motion to reconsider his detention and that motion came on for hearing on July 15, 2002. Release would have been denied due to an alleged outstanding state court warrant. Counsel requested that, instead of denying release, the magistrate hold the motion in abeyance until the issue of the state warrant could be resolved. Counsel thereafter, on August 23, 2002, obtained and provided to the magistrate the paperwork showing that the alleged warrant was no longer pending and requesting that the bond hearing be rescheduled. A detention hearing

4

was held on August 26, 2002, and defendant's request for release was denied. The trial commenced September 10, 2002.

To support a claim of ineffective assistance of counsel, a two prong test must be met. "A reviewing court's task with respect to attorney performance is to 'determine whether, in light of all the circumstances, the [lawyer's performance was] outside the range of professionally competent assistance.'" Hill v. Lockhart, 28 F.3d 832, 837 (8th Cir. 1994), (quoting Strickland v. Washington, 466 U.S. 668, 690, 104 S. Ct. 2052, 2066, 80 L. Ed. 2d (1984)). The burden of establishing ineffective assistance of counsel is on the defendant. Delgado v. United States, 162 F.3d 981, 982 (8th Cir. 1998). Defendant "must also prove prejudice by demonstrating that absent counsel's errors there is a reasonable probability that the result of the proceeding would have been different." Id., citing Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068. Defendant "'faces a heavy burden' to establish ineffective assistance of counsel pursuant to section 2255." DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000) (quoting United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)).

Defendant cannot show any prejudice to his defense by the delay in holding the hearing on his motion to reconsider detention. He was detained even after a showing that the warrant was no longer outstanding.

Defendant contends that counsel was ineffective in failing to file a motion to suppress his December 12, 2001, recorded statement to the F.B.I.. He does not identify any basis for suppressing that statement, other than he did not have the assistance of counsel during that interview. Defendant was not under the circumstances entitled to the assistance of counsel at an interview conducted prior to the institution of formal charges.

Defendant contends that he was denied the effective assistance of counsel because counsel failed to conduct any discovery and failed to present any witnesses (other than defendant) at trial. Defendant has not identified what evidence he contends counsel should have discovered and should have presented in his defense. He has not set forth any facts which he claims should have been discovered which could or would have exculpated him. "A presumption exists that counsel is competent, and the petitioner bears a heavy burden in overcoming the presumption. Harris v. Housewright, 697 F.2d 202, 206 (8th Cir.1982). [Defendant's] conclusory allegations

5

are insufficient to rebut this presumption of competency." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983).

Defendant contends that counsel called no witnesses on his behalf at trial. Defendant contends that counsel told him "we're gonna get a new trial and we don't wanna let the prosecution know what we got." Outside the presence of the jury after the government rested, counsel for the defendant did make a motion for mistrial based upon the government's remark made during the testimony of Chepa Valandra, a social worker for the Bureau of Indian Affairs. That motion was denied prior to the presentation of the defendant's case.

Finally, defendant contends that counsel was ineffective in failing to object to the government's improper comments during closing argument. Defendant does not identify what comments were made that were improper.

Whether counsel failed to present evidence because (1) there was no exculpatory evidence to present, (2) because she failed to discover such evidence, or (3) she assumed I or the Court of Appeals would eventually grant a mistrial is an issue of fact. Further, I do not have a copy of the statement given to the F.B.I. and cannot evaluate whether counsel was ineffective in failing to move for the suppression of that statement. Finally, a copy of the transcript of the closing arguments was not filed and I therefore cannot evaluate at this time whether the defendant's claim as to ineffective assistance at this juncture of the trial may have any basis.

### C. Right to Effective Assistance of Counsel of Appeal.

Defendant contends that counsel failed to raise issues on appeal. He does not identify which issues should have been raised that were not raised. He does argue that, in conjunction with the issue of prosecutorial misconduct and failure to grant a mistrial, counsel failed to identify all instances of alleged prosecutorial misconduct that occurred during closing arguments. He does not specify what those alleged comments were. Defendant has failed to allege anything other than conclusory claims that counsel was ineffective on appeal.

Defendant contends that he was denied counsel on appeal because I did not appoint counsel who could have filed a supplement to his notice of appeal. He contends that he was denied counsel during the time he was in transport by the B.O.P. pending placement, February 27, 2003, to April 14, 2003.

Trial counsel filed a notice of appeal on March 13, 2003. The Court of Appeals appointed trial counsel to represent defendant on appeal on March 18, 2003. Defendant's brief was filed on April 24, 2003. His reply brief was filed on May 28, 2003. Defendant was represented by counsel even while he was in transport pending placement. Further, he had ample time to contact counsel following his April 14, 2003, arrival at his placement prior to the final submission of briefs. Defendant was not denied counsel on appeal.

## II. Fifth Amendment Right Against Self-Incrimination.

Defendant contends that he was not advised of his Miranda rights upon arrest. He contends that the arresting officer asked him to make a statement and that he declined to do so. Nevertheless, he contends that failure to advise him of his Miranda rights was a violation of his constitutional rights, entitling him to vacation of his conviction.

The Fifth Amendment to the United States Constitution affords criminal suspects the rights to be free from compulsory self-incrimination. Criminal suspects must have knowledge of their Fifth Amendment rights "before they can either intelligently exercise or waive these important privileges." United States v. Griffin, 922 F.2d 1343, 1356 (8th Cir. 1990). The United States Supreme Court held in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that any time a person is taken into custody for questioning they must be advised of their Fifth Amendment rights in order "to counteract the 'inherently compelling pressures' of custodial interrogation." Arizona v. Roberson, 486 U.S. 675, 681, 108 S.Ct. 2093, 2097, 100 L.Ed.2d 704 (1988). Miranda "requires that a warning as to the availability of the privilege against self-incrimination and to the assistance of counsel be issued *prior to questioning* whenever a suspect is (1) interrogated (2) while in custody." Griffin, 922 F.2d at 1347.

Whether or not the defendant was in fact "interrogated" following his arrest, his Fifth Amendment claim must fail. The United States Court of Appeals for the Eighth Circuit has held "that because '[t]he reading of Miranda warnings is a procedural safeguard rather than a right arising out of the fifth amendment (sic) itself . . . the remedy for a Miranda violation is the exclusion from evidence of any compelled self-incrimination.'" Hannon v. Sanner, 441 F.3d 635, 636 (8th Cir. 2006) (*quoting* Warren v. City of Lincoln, 864 F.2d 1436, 1442 (8th

7

Cir.1989)). Defendant made no statement in response to the alleged questioning following his arrest. What occurred, if anything, was an attempted violation of the Fifth Amendment.

Defendant also contends that his Sixth Amendment right to counsel was violated when he was questioned following his arrest. The United States Supreme Court held in Massiah v. United States, 377 U.S. 201, 206, 84 S.Ct. 1199, 1202, 12 L.Ed.2d 246 (1964), that the Sixth Amendment requires the suppression of any confession "which federal agents had deliberately elicited from [defendant] after he had been indicted and in the absence of his counsel." Massiah, 377 U.S. at 206, 84 S.Ct. at 1202. In relying on Massiah, the United States Supreme Court has held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." Michigan v. Jackson, 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986).

> Indeed, after a formal accusation has been made – and a person who has previously been just a "suspect" has become an "accused" within the meaning of the Sixth Amendment – the constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation.

Michigan v. Jackson, 475 U.S. at 632, 106 S.Ct. at 1409.

The defendant was not apparently advised of his right to counsel and therefore any waiver of that right would have been invalid. Defendant did not waive his right to counsel at the time of his arrest. Neither did he make an incriminating statement. No Sixth Amendment right to counsel violation occurred.

### III. Confrontation Clause Claim.

Defendant contends that he was denied the right to confront his accusers at the time they gave statements to law enforcement, when they testified before the grand jury, and when they presented their trial testimony. Defendant contends that the Confrontation Clause requires a "prior" opportunity to cross-examine the witnesses.

The United States Supreme Court has held that "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Maryland v.

8

Craig, 497 U.S. 836, 844, 110 S.Ct. 3157, 3162, 111 L.Ed.2d 666 (1990). The Supreme Court has further held that "the right of confrontation is a *trial* right designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987) (emphasis in original) (*citing* California v. Green, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970) ("[I]t is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause") and Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968) ("The right to confrontation is basically a trial right")). The "Confrontation Clause only protects a defendant's trial rights, and does not compel the pretrial production of information that might be useful in preparing for trial." Pennsylvania v. Ritchie, 480 U.S. at 53 n. 9, 107 S.Ct. at 999 n. 9. Defendant's contention that his constitutional rights were violated because he had no opportunity to cross-examine witnesses when they gave pre-trial statements fails.

Defendant claims that the United States Supreme Court's decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), is applicable to his case. In Crawford, the Supreme Court held that the confrontation clause bars the admission of testimonial statements made by an unavailable declarant unless the accused has had a prior opportunity to cross examine the unavailable declarant. Crawford, 541 U.S. at 53-54, 124 S.Ct. 1354. Crawford governs the admissibility of pre-trial hearsay statements. Defendant has not identified any hearsay statements admitted at his trial that were made by a declarant that did not testify at trial.

Defendant contends he was entitled to an "unobstructed opportunity to cross-examine both alleged victims." Defendant contends that Fed. R. Evid. 611(b) unconstitutionally limited the scope of his examination of the alleged victims.

The purposes of the Confrontation Clause are to ensure "that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings." Maryland v. Craig, 497 U.S. at 846, 110 S.Ct. at 3163.

> The right to cross-examination, protected by the Confrontation Clause, thus is essentially a "functional" right designed to promote reliability in the truth-finding functions of a criminal trial. The cases that have arisen

> under the Confrontation Clause reflect the application of this functional right. These cases fall into two broad, albeit not exclusive, categories: "cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 18, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) ( per curiam ).

Kentucky v. Stincer, 482 U.S. 730, 737, 107 S.Ct. 2658, 2663, 96 L.Ed.2d 631 (1987).

> Cross-examination is a right guaranteed by the Sixth Amendment, *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), but the right is not unlimited, and "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

United States. v. Chauncey, 420 F.3d 864, 875 (8th Cir. 2005).

> Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam).

United States v. Wattler, 461 F.3d 1005, 1009 (8th Cir. 2006).

Defendant clearly was not entitled to "an unobstructed opportunity" to cross-examine the victims who testified against him at trial. Defendant claims that cross-examination was unconstitutionally limited by Fed. R. Evid. 611(b). That rule provides:

> Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

In the interest of judicial economy, I have never adhered strictly to that rule and defendant's attorney, a federal public defender, was well aware of my trial practice in that regard. Defendant has not identified any question that trial counsel was prevented from asking a witness on cross-examination because of Rule 611(b). I routinely allow cross examination "beyond the scope" of direct examination.

Defendant claims that the prosecution's use of leading questions to elicit testimony from the two "child" victims violated his Sixth Amendment right to confrontation. Defendant contends that, since 18 U.S.C. § 2241 fixes the age of 12 as the definition of "child," the victims, who were 13 and 16 at the time of trial, could not be considered children for purposes of the child witness exception set forth in Fed. R. Evid. 611(c). Defendant further contends that, since "juveniles . . . are prosecuted and convicted in Federal district courts all the time, as adults," his accusers cannot be considered children. Finally, defendant contends that the government treated his accusers as adults when the F.B.I. interviewed the children without parental consent and cannot change directions and ask that the accusers be considered children during trial testimony.

"Leading questions are generally prohibited during direct examination, 'except as necessary to develop the witness' testimony.' Fed.R.Evid. 611(c). The child witness is a long-recognized exception to this rule." United States v. Butler, 56 F.3d 941, 943 (8th Cir. 1995). The Eighth Circuit held that I did not abuse my discretion in allowing certain leading questions of the victims in this case. United States v. Flute, 363 F.3d at 678-79. "Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255 ." United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001).

The Eighth Circuit decided only whether allowing the use of leading questions was an abuse of discretion. Defendant's claim that the ages of the victims at the time of trial should have precluded the application of the child witness rule were impliedly decided on direct appeal. In any event, the Eighth Circuit has approved the use of leading questions in similar cases. See United States v. Rossbach, 701 F.2d 713 (8th Cir. 1983) (leading questions of fifteen and seventeen year old alleged rape victims allowed) and United States v. Littlewind, 551 F.2d 244, 245 (8th Cir.1977) (leading questions of thirteen and fourteen year old alleged rape victims allowed).

The so-called child witness rule set forth in Fed. R. Evid. 611(c) derives from the Advisory Committee Note to Subdivision (c) which provides, in part:

> The rule continues the traditional view that the suggestive powers of the leading question are as a general proposition undesirable. Within this tradition, however, numerous exceptions have achieved recognition: The witness who is hostile, unwilling, or biased; the child witness or the adult with communication problems; the witness whose recollection is exhausted; and undisputed preliminary matters. 3 Wigmore §§ 774-778.

11

> An almost total unwillingness to reverse for infractions has been manifested by appellate courts. *See* cases cited in 3 Wigmore § 770. The matter clearly falls within the area of control by the judge over the mode and order of interrogation and presentation and accordingly is phrased in words of suggestion rather than command.

The general prohibition of leading questions on direct examination is not constitutionally based and, as set forth by the Advisory Committee, is merely a "suggestion" as to the manner of questioning witnesses. The discretion to allow the use of leading questions on direct examination is not limited to some rigid definition of "child witness" but is based upon the trial judge's determination whether leading questions of a witness of any age are necessary to develop the record. Defendant's Sixth Amendment claim as to the use of leading questions is rejected.

## IV. Due Process Claims.

### A. Racial makeup of the jury.

Defendant contends that his Fifth Amendment right to due process was violated because his claimed right to a trial by jury containing at least six Indian jurors was violated. No such right exists as to charges tried pursuant to the Indian Major Crimes Act, 18 U.S.C. § 1153. It is well settled that, irrespective of any rights accorded to the defendant as to trials in tribal court, the federal courts have jurisdiction to try Indians for crimes committed in Indian country.

Defendant contends that the failure of his jury panel to consist of at least six Native Americans violates Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The United States Supreme Court held in Batson that the Equal Protection Clause prohibits the striking of prospective jurors on the basis of race. Batson, 476 U.S. at 85-86, 106 S.Ct. 1717. Defendant does not contend that the prosecution improperly struck Native American jurors. In any event, a Batson challenge must be "made at the latest before the venire is dismissed and before the trial commences." United States v. Clark, 409 F.3d 1039, 1043 (8th Cir. 2005) (*quoting* United States v. Parham, 16 F.3d 844, 847 (8th Cir. 1994)). It was not and any such claim is barred.

### B. Use of Perjured Testimony.

Defendant contends that the government violated his Fifth Amendment right to due process by presenting the perjured testimony of a government agent. Defendant contends that

12

F.B.I. agent Kevin McGrane falsely testified on direct examination as to the date he interviewed a witness.

The United States Supreme Court "has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). "[T]he defendant must establish that (1) the testimony was in fact perjured and (2) the prosecuting officers knew, or should have known, of the perjury at the time the testimony was presented. United States v. Duke, 50 F.3d 571, 577-78 (8th Cir. 1995). Where there is no reasonable likelihood that the witness's false testimony affected the judgment of the jury, relief is not warranted. *Id* at 579.

The defendant's 15 year old son, E.F., testified that Agent McGrane interviewed him on December 14, 2001. He testified that he was then living with his "Auntie Estelle in Lower Brule" and that he was living away from his mom and brothers. E.F. testified that his sister, A.F., told him in the fall or winter of 2000 that the defendant tried to kiss her and that she wanted him to keep it a secret. He testified that "she was trying to make it seem like my dad was trying to do something sexual with her." He testified that he did not think anything of that incident. He admitted on direct examination that he told Agent McGrane that, after his sister told him what happened that he "wanted to kill him." However, after the interview with McGrane, E.F. "went back to my mom's and I was thinking about it and finally realized all the facts and everything and it wasn't really nothing."

After E.F.'s testimony, the government called Agent McGrane. Agent McGrane testified that he interviewed the defendant's minor son, E.F., on December 14, 2001, at Project Safe in Fort Thompson. Agent McGrane believed E.F. was living with his parents at the time. On cross examination McGrane admitted that E.F. and his youngest sister had been removed from their home by social services two days earlier. McGrane testified that E.F. told McGrane that his sister, A.F., "told him what her father had done and . . . he had wanted to kill his father." On cross-examination, McGrane testified that E.F. "said that [A.F.] had told him something in regards to something of a sexual nature. He did not tell me specifically what that act was."

13

Defendant contends that Agent McGrane committed perjury as to the date of the interview with his son, E.F. Defendant contends that the date of the interview is material because Agent McGrane implied that he had interviewed E.F. after interviewing the defendant and the government misled the jury into believing that defendant had "altered" his son's testimony and tampered with a witness.

There were only two mentions at trial of the date the defendant was interviewed by Agent McGrane. Defendant testified both on direct and on cross examination that the interview was on December 12, 2001. There was no mention regarding the timing of E.F.'s interview being after defendant's interview. E.F. himself testified that the interview took place on December 14, 2001, and that he was not living at home at the time. There is no question as to the date of the interview and as to the fact that E.F. was not living with his father at the time of the interview. There is no evidence in the record that the agent falsely testified as to the date of the interview of E.F. He admitted on cross-examination that E.F. was not living at home at the time of the interview. Defendant cannot establish either the fact of perjury or that there is any reasonable likelihood that McGrane's testimony affected the judgment of the jury. Relief is not warranted on this claim.

## V. OTHER ISSUES

### A. Sufficiency of the Evidence.

Defendant contends that his convictions for aggravated sexual abuse of a child as charged in Counts VIII and IX cannot stand because the victim, Y.F., made a pre-trial statement that defendant's penis was hard during the alleged offense but testified at trial that defendant's penis was soft during the offense. The Eighth Circuit held on appeal that there was sufficient evidence presented to sustain his convictions, even though there may have been conflicting evidence. Issues raised and decided on direct appeal may not be relitigated in a § 2255 proceeding. United States v. McGee, 201 F.3d 1022, 1023 (8th Cir. 2000).

Defendant further contends that, since Y.F. testified that his penis was soft during the offense, no intent to arouse or gratify could be shown. Two counts of aggravated sexual abuse of a child involving Y.F. went to the jury. Count VIII involved a sexual act, contact between the defendant's penis and the victim's vulva. Count IX involved a sexual act, contact between the

14

defendant's penis and the victim's mouth. Neither count required the element "with an intent to abuse, humiliate, harass or degrade the victim or to arouse or gratify the sexual desire of any person." In any event, there is no basis for the contention that testimony of an erect penis is necessary to show sufficient evidence of intent.

### B. Violation of the Bail Reform Act.

Defendant contends that failure to allow him to confront witnesses who made pre-trial statements, which statements were used by the government to successfully detain him, violated the Bail Reform Act of 1984, 18 U.S.C. § 3164. Section 3164 prohibits the continuous detention of a defendant for more than 90 days without a trial (subject to the exclusion of time periods set forth in 18 U.S.C. § 3161). Whether or not § 3164 was violated in this case, the defendant cannot succeed on a motion to vacate, set aside, or correct his sentence for such violation. The relief available for a violation of § 3164 is review of the order of detention. 18 U.S.C. § 3164(c). See United States v. Krohn, 558 F.2d 390, 393 (8th Cir. 1977) ("§ 3164 does not provide for the sanction of dismissal of the indictment, which is the relief appellant seeks.")

### C. Violation of Fed. R. Crim. P. 43.

Defendant contends that he was deprived of the right to be present on two occasions when counsel had contact with the court. Fed. R. Crim. P. 43(a) requires the that the defendant be present at:

> (1) the initial appearance, the initial arraignment, and the plea;
> (2) every trial stage, including jury impanelment and the return of the verdict; and
> (3) sentencing.

However, the defendant need not be present for a proceeding involving only a conference or a hearing on a question of law. Fed. R. Crim. P. 43(b)(3). The conferences that the defendant referred to in his brief were conferences involving questions of law and he had no right to be present. The court routinely allows defendants, upon request, to be present at any hearing.

Shortly before trial, counsel for the government gave notice of the intent to present the testimony of an expert witness. An informal telephone conference was held regarding the timing and sufficiency of that notice. Those matters were taken up again on the record at a hearing

15

concerning the admissibility of the proffered testimony. Only legal matters within Rule 43(b)(3) were discussed at those informal conferences.

Defendant contends that counsel approached the Court on March 5, 2002, requesting a trial continuance. Defendant had not yet been arrested on that date and counsel was not yet appointed for the defendant. On April 9, 2002, counsel for the defendant filed a motion to continue the trial. The basis of the motion was that discovery was just received that date and additional investigation needed to be accomplished prior to the April 9, 2002, motions deadline. Defendant contends that he did not want to consent to a continuance, although he did sign a consent on April 12, 2002. Defendant's right to be present were not violated by his counsel's motion for a continuance. No competent attorney would have allowed the motions deadline to pass when they had not had an opportunity to review discovery and determine whether motions to suppress were appropriate.

### D. Admission of Rule 404(b) Evidence.

Defendant contends that I impermissibly allowed evidence to be admitted under Fed. R. Evid. 404(b). Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity with his character. It may, however, be admissible for other purposes, such as demonstrating proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

> Rule 404(b) is a rule of inclusion, not exclusion, and "admits evidence of other crimes or acts relevant to any issue in the trial, unless it tends to prove only criminal disposition." *United States v. Claxton*, 276 F.3d 420, 423 (8th Cir.2002) (internal quotations omitted).

United States v. Fletcher, 322 F.3d 508, 518-19 (8th Cir. 2003).

> "[U]nfair prejudice is unlikely to be found where the district court instructed the jury that the bad acts evidence was not to be used as proof that the defendant committed the charged offense." United States v. Warfield, 97 F.3d 1014, 1027 (8th Cir.1996), cert. denied, 520 U.S. 1110, 117 S.Ct. 1119, 137 L.Ed.2d 319 (1997).

United States v. Fletcher, 322 F.3d at 519.

16

Evidence that the defendant had previously been convicted of a crime was properly admitted and the jury was properly instructed as to the limited purposes for which that evidence could be considered.

### E. Fine and Restitution.

Defendant contends that the substantive statutes of conviction do not authorize a sentence of fine or restitution. Defendant failed to raise this issue on appeal. In any event, the claim is frivolous. 18 U.S.C. § 3571 authorizes the imposition of a fine against a defendant who has been found guilty of an offense. 18 U.S.C. § 3663 authorizes the court to require the defendant to make restitution to any victim of his offenses.

### F. Federal Jurisdiction.

Defendant contends that his indictment was defective because the sex offenses charged were not specifically enumerated in 18 U.S.C. § 1153. The Indian Major Crimes Act, 18 U.S.C. § 1153, specifically encompasses all felonies under Chapter 109A (sexual abuse) and incest (defined by state law).

Defendant contends that the Crow Creek Sioux Tribal Court had concurrent jurisdiction over his offenses, that he did not relinquish any of his tribal rights, and therefore this court had no federal jurisdiction to charge or convict him. This claim is frivolous.

All other claims made by defendant are without any legal merit.

### ORDER

Based upon the foregoing,

IT IS ORDERED:

1. The motion to vacate, Doc. 137, as supplemented by Doc. 138, is denied as to all his claims except as set forth below.

2. Pursuant to Rule 4 of the Rules Governing § 2255 Proceedings, the United States Attorney in and for the District of South Dakota shall serve and file an answer or responsive pleading, together with a legal brief or memorandum in support thereof, that complies with Rule 5 of the Rules Governing § 2255 Proceedings within 30 days. Such answer and brief is required only as to the claim that counsel was ineffective in relation to whether counsel was ineffective in

17

failing to present evidence in the defendant's defense, in failing to move for the suppression of defendant's statement, or in failing to object to the government's closing argument.

Dated this 5th day of March, 2008.

BY THE COURT:

*Charles B Kornmann*
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY *Barbara J Payke*
Deputy
(SEAL)

18