# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH DAKOTA

## CENTRAL DIVISION



FILED

DEC 1 0 2008

CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 02-30017 |
| | * | |
| Plaintiff, | * | |
| | * | REPORT AND RECOMMENDATIONS |
| -vs- | * | FOR DISPOSITION OF MOTION |
| | * | UNDER §2255 TO VACATE, SET |
| GARY FLUTE, SR., | * | ASIDE OR CORRECT SENTENCE |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The above-captioned 28 U.S.C. §2255 case was referred to this Court, pursuant to 28

U.S.C. §636(b)(1)(B), for the purpose of conducting any necessary hearings, including

evidentiary hearings, and submitting proposed findings of fact and recommendations for

disposition thereof.[1]  Docket No. 143.  Having carefully reviewed and considered all of the

records on file and being fully advised in the premises, the Court does now make and propose

the following findings, report and recommendations for disposition of the case.

I.

Defendant, Gary Flute, Sr. (Flute), an Indian, was charged in a nine-count Indictment

with sexual abuse, incest and aggravated sexual abuse of his two minor daughters.  United

States v. Flute, 363 F.3d 676, 677 (8th Cir. 2005), cert. denied, 547 U.S. 1009 (2006).  He

was convicted by a jury on two counts of sexual abuse of A.F., one count of incest with A.F.,

and two counts of aggravated sexual abuse of Y.F.  Id.  The jury found Flute not guilty of

---

[1]The referral was made by the Honorable Charles B. Kornmann, United States District
Judge, presiding.

three other counts and the trial court granted his motion for judgment of acquittal on the remaining count. Id. Flute filed motions for judgment of acquittal and for a new trial, alleging the insufficiency of evidence and prosecutorial misconduct. Id. The trial court denied the motions and later sentenced Flute to 180 months on the three counts involving A.F. and 372 months on the two counts concerning Y.F., to run concurrently and to be followed by five years of supervised release. Id.

On appeal, Flute raised three issues, namely, that (1) he was denied a fair trial because of improper comments made by the prosecutor; (2) the evidence was insufficient to support the verdict; and (3) the trial court's allowance of leading questions was an abuse of discretion. The Eighth Circuit Court of Appeals, however, affirmed the trial court's judgment. Flute, 363 F.3d at 679. Flute's petition for a writ of certiorari was thereafter denied by the United States Supreme Court. Flute v. United States, 547 U.S. 1009 (2006).

Flute then filed a timely motion under §2255 to vacate, set aside or correct his sentence. Docket No. 137. The District Court[2] issued an opinion disposing of most of Flute's §2255 claims. United States v. Flute, No. CR. 02-30017, 2008 WL 649139 (D.S.D. Mar. 10, 2008). The Court, however, determined that there were issues of fact as to whether Flute's trial counsel failed to present evidence because (1) there was no exculpatory evidence to present; (2) counsel failed to discover such evidence; or (3) counsel assumed the trial court or appeals court would eventually grant a mistrial. 2008 WL 649139 at *4. The Court also determined that it could not evaluate whether counsel was ineffective in failing to (1) move

---

[2]The District Court and the trial court are one and the same. See note 1, ante.

2

for the suppression of Flute's pretrial statement to an FBI agent, because the Court did not

have a copy of the statement; and (2) object to allegedly improper comments made by the

prosecutor during closing argument, because a copy of the transcript of the argument had not

been filed. Id. The Court directed that Plaintiff, United States of America (Government),

serve and file a response to these claims. Id. at *13. The Court, at the same time, referred

the case to this Court to handle on a report and recommendation basis. Docket No. 143.

Following the District Court's referral order, this Court reviewed the record, including

the Government's response and brief and trial counsel's affidavit as well as Flute's traverse

to the same. After doing so, the Court noted that Flute supplemented his prior allegations

with a number of new or additional ones in support of his claims. The Court thereafter

afforded the Government an opportunity to reply to these allegations, which the Government

has done, id. at 153, 157, and Flute, in turn, has objected to, id. at 158.

II.

Although Flute has not filed a motion seeking to have counsel appointed for him, in

light of the District Court' referral order, this Court must nonetheless decide whether he is

entitled to the appointment of counsel in this instance.

At the outset, it must be observed that there is neither a constitutional nor a statutory

right to counsel in §2255 proceedings; instead, the appointment of counsel is committed to

the discretion of the reviewing court. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987);

Baker v. United States, 334 F.2d 444, 447-48 (8th Cir. 1964). A court, however, may appoint

counsel in a §2255 case if the interests of justice so require. 18 U.S.C. §3006A(a)(2)(B); 28

U.S.C. §2255(g). If the court conducts an evidentiary hearing, the interests of justice require

the appointment of counsel. Rule 8(c) of the Rules Governing §2255 Proceedings (§2255 Rules) ("[I]f an evidentiary hearing is warranted, the judge <u>must</u> appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. §3006A.") (emphasis added); <u>see also</u> <u>Roney v. United States</u>, 205 F.3d 1061, 1063 (8th Cir. 2000). If no evidentiary hearing is necessary, the appointment of counsel is discretionary. <u>Hoggard v. Purkett</u>, 29 F.3d 469, 471 (8th Cir. 1994); <u>Yellow Hawk v. United States</u>, 314 F.Supp.2d 921, 927 (D.S.D. 2004).

In exercising its discretion, a court should first determine whether the §2255 movant has presented a non-frivolous claim. <u>Abdullah v. Norris</u>, 18 F.3d 571, 573 (8th Cir.), <u>cert. denied</u>, 513 U.S. 857 (1994); <u>Gomez v. United States</u>, 100 F.Supp.2d 1038, 1042 (D.S.D. 2000). If the movant has presented only claims that are frivolous or clearly without merit, the Court should dismiss the case without appointing counsel. Rule 4 of the §2255 Rules. If the movant has presented a non-frivolous claim, the court should then determine whether, given the particular circumstances of the case, the appointment of counsel would benefit the movant and the court to such an extent that "the interests of justice so require it." §3006A(a)(2)(B); <u>Nachtigall v. Class</u>, 48 F.3d 1076, 1081 (8th Cir. 1995). In determining whether the appointment of counsel is necessary for a movant seeking relief with non-frivolous claims, the court should consider the legal and factual complexity of the case, the movant's ability to investigate and present claims and any other relevant factors. <u>McCall v. Benson</u>, 114 F.3d 754, 756 (8th Cir. 1997); <u>United States v. Hill</u>, 171 F.Supp.2d 1032, 1035-36 (D.S.D. 2001).

4

Applying these factors to the case at hand, the Court concludes that the interests of justice do not require the appointment of counsel. The claims Flute raises in his motion, while not frivolous or plainly devoid of any colorable merit on their face, are nonetheless, not ones that involve complex legal or factual issues, or ones that require further fact investigation. McCall, 114 F.3d at 756; Yellow Hawk, 314 F.Supp.2d at 927. It is evident that Flute understands the issue involved and is capable of articulating them. Yellow Hawk, 314 F.Supp.2d at 927. Moreover, his motion and supplemental filings are sufficiently clear to enable the Court to determine whether §2255 relief is warranted. See Nachtigall, 48 F.3d at 1082; Hill, 171 F.Supp.2d at 1036. And, Flute's claims can be resolved on the basis of the record now before the Court. See Hoggard, 29 F.3d at 472; Hill, 171 F.Supp.2d at 1036. Finally, Flute's likelihood of success on the merits does not support the appointment of counsel here. See United States v. Waite, 382 F.Supp.2d 1, 2-3 (D.C. 2005). For these reasons, the Court finds it unnecessary to appoint counsel for Flute and declines to do so.

### III.

The District Court, in its referral order, directed that this Court determine whether an evidentiary hearing was required on Flute's motion. Flute has not requested an evidentiary hearing, but the Court is duty bound, under Rules 4(b) and 8(a) of the §2255 Rules, to decide if an evidentiary hearing is mandated or otherwise called for here.

An evidentiary hearing need not be held "if (1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact." Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting

5

Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003), cert. denied, 540 U.S. 1199
(2004)). Likewise, an evidentiary hearing is not required "where the files and records of the
case conclusively show that the movant is not entitled to relief." Kingsberry v. United States,
202 F.3d 1030, 1032-33 (8th Cir.), cert. denied, 531 U.S. 829 (2000); Blankenship v. United
States, 159 F.3d 336, 337 (8th Cir. 1998), cert. denied, 525 U.S. 1090 (1999).

Flute has failed to allege, or support his motion with, facts which, if true, would
entitled him to relief. Instead, his motion and claims are based on nothing more than
conclusory allegations which will not suffice. Woods v. United States, 567 F.2d 861, 863
(8th Cir. 1978); see also Azure v. United States, 925 F.Supp. 671, 681 (D.S.D. 1996).

Regardless, Flute's claims are ones that are capable of resolution from the record.
Blankenship, 159 F.3d at 337-39; Petersen v. United States, 352 F.Supp.2d 1016, 1019
(D.S.D. 2005). After close scrutiny of the records on file, the Court is convinced that Flute
cannot prevail on his claims. Saunders v. United States, 236 F.3d 950, 952-53 (8th Cir.),
cert. denied, 533 U.S. 917 (2001); see also United States v. Regenos, 405 F.3d 691, 694 (8th
Cir. 2005).

This being the case, Flute is not entitled to an evidentiary hearing and the Court shall
proceed to dispose of his motion in a summary manner "as justice dictates." See Rules 4(b)
and 8(a) of the §2255 Rules.

## IV.

Flute raises several ineffective assistance of counsel claims. In doing so, he faces a
heavy burden under the two-part Strickland test to establish that his trial counsel's assistance
was ineffective. To prevail on his claims, Flute must show both (1) that counsel's

performance was deficient, i.e., fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984); see also United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

"Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. A court must "indulge a strong presumption" that counsel's conduct was reasonable and that counsel "made all significant decisions in the exercise of reasonable, professional judgment." Id. at 689-90. Counsel, therefore, cannot be judged ineffective as long as the approach taken "might be considered sound trial strategy." Id. at 689. When reviewing counsel's performance, a court must avoid using "the distorting effects of hindsight" and must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time." Id. "[I]t is all too easy for a court, examining counsel's defense after it is proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id.

"[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692. The burden is on the movant to prove, by a preponderance of the evidence, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the movant cannot prove prejudice, a court "need not address whether counsel's performance was deficient." DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000); United States v. Flynn, 87 F.3d 996, 1000 (8th Cir. 1996).

7

Applying these precepts to the present case leads inescapably to the conclusion that Flute has failed to meet the rigid standards of <u>Strickland</u> and its progeny and therefore cannot prevail on, or obtain §2255 relief for, his ineffective assistance of counsel claims.

V.

Flute first claims that trial counsel was ineffective because counsel did not file a motion to suppress his December 12, 2001 statements to Kevin McGrane, a special agent with the Federal Bureau of Investigation, and John Vettelson, a criminal investigator for the Bureau of Indian Affairs, Lower Brule agency. Docket Nos. 138 at p. 48, 152 at p. 2. Yet as the District Court observed, Flute "does not identify any basis for suppressing [t]he statement[s] other than he did not have the assistance of counsel during that interview." <u>Id</u>. at 142, p. 5.

In her April 23, 2008 affidavit, trial counsel explained why she did not file a motion to suppress Flute's statements:

> He did not confess to sexual crimes. He advised me that he was not intoxicated at the time of the interview and provided no basis for a challenge [to] the voluntariness of the interview. Without a basis to challenge the interview on Fifth Amendment grounds, in my opinion, filing a motion to suppress would have been frivolous and without merit. The topic was discussed several times with Mr. Flute, both to determine whether there was a legal basis to suppress any statement and my decision that there was not a basis to file the motion.

Docket No. 150-3 at p. 4. The Government has filed a copy of the FD-302 that McGrane prepared of the December 12th interview and a review of the same corroborates counsel's statements. The 302 indicates that:

1.      Flute was not "in custody" at the time of the interview so as to require <u>Miranda</u> warnings, <u>see</u> <u>United States v. LeBrun</u>, 363 F.3d 715, 719-24

8

                    (8th Cir. 2004) (en banc), cert. denied, 543 U.S. 1145 (2005); see also
                    United States v. Plumman, 409 F.3d 919, 924-25 (8th Cir. 2005);
                    United States v. Bordeaux, 400 F.3d 548, 559-60 (8th Cir. 2005).

2.      His statements were not extracted by threats, violence or express or
         implied promises sufficient to overbear his will and to critically
         impair his capacity for self-determination and were therefore
         voluntary under the Fifth Amendment and 18 U.S.C. §3501, see
         LeBrun, 363 F.3d at 724-27; see also Bordeaux, 400 F.3d at 560-61.

3.      He did not admit to sexually abusing A.F. or Y.F., saying that he
         "didn't" or "couldn't remember doing anything like that" and that he
         "didn't know why th[e] girls were saying these things about him."

4.      He requested a lawyer after talking to McGrane and Vettelson for
         more than an hour.

Docket No. 150-2. Moreover, Flute's statements were not used by the Government in its

case in chief at trial, but only for impeachment purposes after Flute took the stand and

testified that he did not sexually abuse the girls (as opposed to did/could not "remember"

sexually abusing them). See T. Tr. 373-74.

     Trial counsel's decision not to contest the propriety of Flute's statements was well

founded in both law and fact and by no means can be considered outside the range of

reasonable professional judgment. Strickland, 466 U.S. at 690. Nor can it be said that

there is a reasonable probability that Flute would have prevailed on a motion to suppress,

had counsel filed one, or that Flute was prejudiced by the lack of one. Id. at 694-95. In

short, Flute ineffectiveness claim, premised on counsel's failure to file a suppression

motion, is meritless.

VI.

Flute next faults trial counsel for not calling any witnesses to support his own testimony and to refute the Government's case against him. Docket Nos. 138 at p. 47, 152 at pp. 5-6, 8, 156 at p. 7. Counsel addressed why no witnesses, other than Flute himself, were called at trial in her April 23rd affidavit:

> [Flute's] primary focus in preparation of the case was his belief that both girls [A.F. and Y.F.] were sexually active with persons other than himself. My investigator did attempt to confirm information obtained from [ ] Flute. The information developed during the investigation of this case was used on cross-examination of the prosecution witnesses. Other than [ ] Flute, I wanted to present evidence from his wife, Marlene Flute, to confirm where the family was living at certain times, at what times a particular vehicle was owned by the family, and interactions among the family members in terms of disciplinary problems with both girls. She was reluctant to come to the trial and in fact, would not appear at trial because there was a pending arrest warrant for her concerning state [ ] criminal charges. [ ] Flute did not want her arrested and did not want her to be subpoenaed after he learned there were pending criminal charges against her.

Id. at 150-3, p. 3.

Decisions regarding the calling of witnesses are a "virtually unchallengeable" matter of trial strategy, see United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (quoting Bowman v. Gammon, 85 F.3d 1339, 1345 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997)), and trial counsel's decisions in that regard here do not fall outside this wide parameter of protection. Flute's unsubstantiated allegations, that experts and unidentified witnesses should have been called to support his defense and contradict the evidence and testimony offered by the Government, are wholly inadequate. He has provided no affidavits or other information to show what the witnesses, he maintains would have been helpful to his case, would have said or offered. The Court, therefore, is in no position to find or

10

conclude that counsel's failure to call witnesses, in addition to Flute himself, was anything other than a sound tactical choice. See Anderson v. Hopkins, 113 F.3d 825, 832 (8th Cir. 1997); Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir.), cert. denied, 493 U.S. 898 (1989).

Nor can it be said that trial counsel acted ineffectively by failing to call one or more expert witnesses to discredit the Government's experts. Counsel relied on effective cross-examination to attack the experts and other witnesses called by the Government and to help demonstrate that if A.F. and Y.F. had been sexually abused, Flute was not the one who did it. Such an approach is legitimate trial strategy and, a difference of opinion as to the propriety of such a strategy, does not amount to ineffective assistance of counsel. Garritsen v. Leapley, 541 N.W.2d 89, 93-94 (S.D. 1995); see also Knecht v. Weber, 2002 SD 21, ¶21, 640 N.W.2d 491, 500-01.

There being no non-conclusory showing of subpar performance and prejudice, Flute cannot obtain relief, under the Sixth Amendment, based on his counsel's failure or refusal to call any trial witnesses other than himself.

VII.

While berating trial counsel for not calling defense witnesses at trial to support his testimony, Flute, at the same time, boldly asserts that counsel "manipulated" him into taking the stand. Docket Nos. 138 at p. 48, 152 at p. 5, 158 at pp. 12-13. He does not, however, elaborate on what counsel said or did to get him to testify, other than telling him to be "forceful" and unequivocal in his testimony. Id. at 152, p. 5. Counsel, of course, denies Flute's assertions in her October 24, 2008 affidavit, saying this:

11

With reference to the allegations . . . concerning [ ] Flute's decision to testify at trial, I am stating that any decision to testify rested solely with [ ] Flute. While I advised [ ] Flute that it was my opinion that he should testify, given the testimony heard on direct from both complaining witnesses, it was his decision to ultimately make. [ ] Flute had maintained that he did not sexually abuse either daughter and I knew that would be his testimony. I would not and did not advise him to lie under oath or to change his testimony in any way from what he had told me during the course of the case. [ ] Flute said from the beginning of my representation of him that he did not sexually touch or sexually abuse either girl and that formed the basis of the defense. In advising a client on how to present testimony, I would normally tell the client to speak clearly, to not look away from the jury and to speak with certainty. I do not have any independent recollection of telling [ ] Flute to speak forcefully, but that could be one interpretation of my normal advice to a client that if he chooses to testify, then he needs to convince the jury of his credibility. In any event, I would not tell any client, nor did I tell [ ] Flute to change his story, to lie or to do anything but tell the truth when under oath on the witness stand. Further, at no time did I speak with [the prosecutor] regarding [ ] Flute's decision to testify. I did not advise [the prosecutor] at any time prior to [ ] Flute taking the witness stand that [ ] Flute would or would not testify.

Id. 157-2 at pp. 2-3.

The record is devoid of any evidence to support Flute's conclusory allegation that he was "manipulated" into testifying by trial counsel. Flute does not allege that counsel failed to advise him of his right not to testify or of the consequences of doing so. Nor does he dispute that his defense, all along, was that he at no time ever sexually abused A.F. and Y.F. Flute apparently believes now that counsel should not have called him to testify at trial and allowed the Government, through cross-examination and impeachment, to undermine his credibility and defense. Both A.F. and Y.F. testified about Flute sexually abusing them, and their testimony was corroborated with medical and other evidence. In light of all of the testimony and evidence and Flute's contrary "abjure" defense, it may well have been professionally unreasonable for counsel to have recommended that Flute not testify.

12

Counsel's advice that Flute testify on his own behalf, which he followed, was a tactical decision that should not be second guessed even if, when viewed retrospectively, the decision did not produce a favorable result.  Nazarenus v. United States, 69 F.3d 1391, 1397 (8th Cir. 1995); Krimmel v. Hopkins, 44 F.3d 704, 710 (8th Cir. 1995).

Flute's allegations, insofar as they accuse trial counsel of telling him to lie under oath or change his testimony, are subject to summary dismissal because they are inherently incredible and contradicted by counsel's under oath statements.  See Engelen v. United States, 68 F.3d 238, 240-41 (8th Cir. 1995).  To the extent that he alleges that counsel told him to speak truthfully, but convincingly and without equivocation, Flute's allegations are in accord with counsel's rendition of the advice she gave to him.  Advice such as this was part and parcel of counsel's duties and is well within the broad realm of reasonable professional assistance expected of similarly situated defense attorneys.

Flute's allegations of "manipulation" and "forcefulness," with respect to testifying at trial, are incredible, lack probity and do not provide him with a basis for relief.

## VIII.

In his original §2255 motion, Flute alleged that trial counsel told him, after the prosecutor supposedly violated a pre-trial ruling, that "we're gonna get a new trial and we don't want to let the prosecution know what we got."  Docket No. 138 at p. 48.  He posits that counsel's failure to call supporting defense witnesses was based on her belief that the prosecutor's violation was "highly prejudicial" and would result in the granting of a mistrial. Id.  Counsel categorically denied that she ever made such a statement, id. at 150-3, pp. 3-4,

and Flute, in a responsive filing, "concur[red]", id, at 152, p. 9, thereby obviating any need now to address the allegations, including the validity and relative merits of them.

## IX.

Flute asserts that he wanted trial counsel to "investigate," and presumably obtain a copy of, the diary McGrane talked about, during the December 12th interview, that A.F. had been writing in for "years."[3] Id. at 152, p. 3, 158 at pp. 7-8. Flute maintains that he looked through the diary, "sometime prior to Thanksgiving in 2001" and that "[t]he pages [of it] were blank." Id. at 152, p. 3. A.F.'s diary, containing her writings and descriptions of events, was provided to counsel prior to trial and was offered and received into evidence, without objection, during the trial itself. T. Tr. 76-83, 129-32, 135. What Flute refers to and may have looked at before the 2001 Thanksgiving holiday with blank pages, was not the diary that was used as evidence against him. Id. at 79-82, 130, 132. Because Flute's assertions are not supported by the record, but are refuted by it, they are of no help to him in his quest for relief.

## X.

The same is true as to Flute's contention that the prosecutor tampered with the entire jury pool by asking "one prejudicial question" during the selection process. Docket Nos. 152 at p. 5, 158 at pp. 10-12. Significantly, Flute does not say what the question was that supposedly tainted the jury pool or what trial counsel did, or failed to do, in response to it that

---

[3]In fact, Flute was shown and allowed to read a portion of A.F.'s diary during the course of his interview with McGrane on December 12th. Docket No. 150-2 at p. 3.

14

was deficient and prejudicial to him.[4]  His contention, therefore, is nothing more than a conclusory one, unsupported by any factual specifics, and is subject to dismissal for this reason alone. Smith v. United States, 677 F.2d 39, 41 (8th Cir. 1982).

XI.

Summary dismissal is likewise warranted on Flute's claim that A.F. reported having to "climb over" the console of a blue car prior to, during or after being sexually abused by him. Docket Nos. 152 at pp. 2, 6, 158 at p. 14.  Flute maintains that McGrane told him this, that the report was untrue (because neither of the two blue vehicles Flute owned at the time had consoles in them) and that counsel should have investigated the matter and pursued the same with inquiries and evidence at trial. Id. at 152, pp. 2, 6.

No mention is made anywhere in the record, other than in Flute's own filing, of A.F. climbing over a car console in connection with Flute's sexual abuse of her.  A.F. does describe Flute having sex with her on the hood of the family's car (cunnilingus) and in the backseat of the car (penile/vaginal intercourse), T. Tr. 113-20, but at no time does she ever say anything about a console.

Flute's unsubstantiated and conclusory claim provides him with no basis for, or entitlement to, the relief he seeks under §2255.  Moreover, inasmuch as Flute has failed to demonstrate that trial counsel's actions and conduct, pertaining to the console evidence, were

---

[4]Although Flute maintains that the "particular prejudicial question" he refers to is a part of one of the exhibits he filed with his §2255 motion, see Docket No. 158 at pp. 10-11, the documents he cites to and relies on (pages 29-39 of his writ of certiorari to the Supreme Court) are mentioned in one exhibit, but were never filed with that exhibit and do not appear anywhere in the record. See Docket No. 137-9 at pp. 1-19. Flute does say, in one of his filings, that the question pertained to "anal sex", Docket No. 158 at p.11, but does not provide any more detail or information than this.

15

deficient and prejudicial to him, within the meaning of <u>Strickland</u>, his claim must similarly fail.

XII.

Flute complains that trial counsel should have put before the jury evidence that Y.F. had sex with a young man (St. John) sometime before Y.F. was examined by Renette Kroupa, a physician's assistant, to provide an alternative explanation for Y.F.'s diminished posterior hymen, <u>see</u> Fed. R. Evid. 412(b)(1)(A), and to rebut Kroupa's testimony that nothing but penetration could have caused this "injury." Docket Nos. 152 at pp. 6-7, 158 at p. 14. Flute admits, however, that he was not aware of Y.F.'s alleged sexual encounter with St. John until at least seven months after his trial. <u>Id</u>. at 152, pp. 6-7.

Taking Flute at his word, it can be assumed that he never spoke to counsel about Y.F. supposedly having intercourse with St. John or that Flute provided counsel with any information about it prior to or during the trial. Counsel, however, apparently knew of the alleged St. John incident because she brought it up at a sidebar conference during the trial while Kroupa was on the witness stand. T. Tr. 234. Counsel later decided not to question Kroupa about what Y.F. told Kroupa had happened:

> In reviewing the interview that [ ] Kroupa had with [Y.F.] and comparing it to [Y.F.'s] testimony yesterday, I am not going to seek to question [ ] Kroupa about anything [Y.F.] said to her [Kroupa] regarding another person doing any kind of sexual act with her [Y.F.].

<u>Id</u>. at 309.

The reason why counsel made this decision is obvious. Y.F. testified that she touched Flute's penis with her hand, that she put his penis in her mouth, and that he touched her

16

vagina with his penis. Id. at 181-82, 186-87. At no time, however, did Y.F. testify that Flute

had intercourse with her or that he penetrated her vagina. In fact, she insisted that Flute's

penis just "touched", but did not go inside, her vagina. Id. at 187. Given these

circumstances, the episode that seemingly involved Y.F. having "sex" with St. John, see

Docket No. 152 at p. 7, would probably not have been admissible, under Rule 412(b)(1)(A),

to prove that someone other than Flute (such as St. John) was the source of A.F.'s diminished

hymen.

Because of the difficulties inherent in making an evaluation of trial counsel's decision,

the Court must presume that counsel's conduct was reasonable and that, under the

circumstances, appropriate trial strategy unless Flute can show otherwise. Strickland, 466

U.S. at 689. He has not come even close to doing so.

And, Flute has not shown that but for trial counsel's decision not to present evidence

relating to the so-called St. John incident or to cross-examine Kroupa about it, the jury would

have had a reasonable doubt as to either or both of the aggravated sexual abuse counts

involving Y.F. See id. at 695. Such evidence, considering the strength of the Government's

case against Flute, would not have had a pervasive effect on, or alter the evidentiary

landscape of, the trial, or resulted, in all likelihood, in a different decision being reached. See

id. at 696.

Failure to make the required showing of either deficient performance or prejudice

defeats any ineffective assistance of counsel claim. Id. at 700. Here, there is a double

failure. Id. Specifically, Flute has not shown that the justice of one or more of his

convictions was rendered unreliable by a breakdown in the adversary process caused by deficiencies in his trial counsel's decision making. Id.

## XIII.

In two related claims, Flute asserts that the prosecutor improperly commented on Flute's pre-arrest silence (while being interviewed by McGrane) during the prosecutor's cross-examination of Flute and in closing argument. Docket Nos. 138 at p. 48, 152 at pp. 3-4, 156 at pp. 7-8, 158 at pp. 8-10. Flute contends that trial counsel was ineffective in allowing the prosecutor to do this. Id. at 156, p. 7.

Contrary to Flute's contention, the prosecutor did not inquire into or bring out Flute's pre-arrest silence during cross-examination of him. See T. Tr. 364-78. The prosecutor did ask Flute what he said during his December 12th interview with McGrane. Id. at 372-74. The examination included questioning intended to highlight the discrepancies between what Flute had earlier told McGrane and what Flute had related under oath to the jury. Id. at 373-74. Such questioning went directly to Flute's credibility and was entirely permissible.

Moreover, at no time did the prosecutor ever comment on or raise an argument about Flute's silence during closing argument. Closing Arg. Tr. 2-14, 31-36.[5] The prosecutor did make light of Flute earlier saying that he did not "recall" sexually abusing A.F. and Y.F. and then testifying indubitably that he did not abuse them. Id. at 32. In doing so, the prosecutor again tried to attack Flute's credibility and argue that his testimony should not be believed over that of his daughters. Id.

---

[5]Since the time of the District Court's decision on Flute's §2255 motion, a transcript of the closing arguments at trial has been prepared and is now part of the record.

18

In any event, even if testimony and/or argument had been presented to the jury about Flute's silence, his rights would still have not been violated. This is because Flute voluntarily provided information to McGrane, in a non-custodial setting, aimed at dispelling the information A.F. and Y.F. had given. United States v. Davenport, 929 F.2d 1169, 1174-75 (7th Cir. 1991), cert. denied, 502 U.S. 1031 (1992). Once he did that, the Government was entitled to mention at trial that Flute refused to answer further questions after being told that McGrane believed what the girls had said were true, that he was obliged to find out what happened and get Flute help so no one else would get hurt. United States v. Bonner, 302 F.3d 776, 784 (7th Cir. 2002). When Flute tried to tell an exculpatory story to the jury, that he did not sexually abuse either one of his daughters, the Government was permitted to impeach him not only with his prior statements to McGrane, but also with his refusal to say anything more when pressed to refute what both girls said he did. Davenport, 929 F.2d at 1174-75.

Either way, Flute's ineffective assistance claim, premised on an alleged violation of his right to silence, has no basis in fact or law and therefore cannot be relied on as a fulcrum for redress.

XIV.

In a related claim, Flute alleges that trial counsel was ineffective when she failed to object to the prosecutor's "contemptuous circumvention" of an "attempted curative instruction" given by the trial court after A.F. began crying on the first day of trial. Docket Nos. 138 at pp. 48-49, 152 at pp. 4-5, 8, 156 at p. 7. According to Flute, the prosecutor

19

improperly commented on A.F. crying, during closing argument, and counsel should have objected to this, but never did so. Id. at 156, p. 7.

Flute's claim lacks a factual foundation. The trial court never gave a curative instruction as Flute maintains. Instead, when A.F. started to cry during her direct examination, the court granted the Government's request for a short break. T. Tr. 120-21. Twenty-five minutes later, A.F. was still sobbing and said she could not go on. Id. at 121-22. The prosecutor then asked permission to call another witness and to recall A.F. at a later time. Id. at 122. Trial counsel objected to this, id., and the court overruled the objection, saying:

> I think it would be detrimental to your client . . . to have her [A.F.] in the courtroom carrying on under great emotional stress and having the jury sit there and watch her and listen to that. I don't know what they might conclude would be causing her to do that. But I think they could very well conclude it's not helpful to your client.
>
> The Court has the authority to control the order of the witness' appearances and to let attorneys call witnesses out of order and, so, I am exercising that discretion and we want to move forward here. She can't answer any questions, obviously, if she's sobbing. And we don't want her up here sitting here while we're all sitting here looking at her.

Id. at 123. After a brief examination of McGrane, the Government's next witness, A.F. was called again as a witness and questioned by both the prosecutor and counsel. Id. at 124-74.

Although the prosecutor did comment, in closing argument, about the "demeanor of the witnesses," Closing Arg. Tr. 13, he never made mention of A.F. crying or, for that matter, of her having to be excused, in the middle of her testimony, to collect herself before being

20

examined further.[6]  Inasmuch as no curative instruction was ever given, much less violated, Flute's ineffectiveness claim has no "warp and woof" and must fall by the wayside.

XV.

Flute raises two other, what appear to be non-ineffective assistance of counsel, claims. First, he alleges that transcripts of his trial and sentencing hearing were altered, doctored or edited without his consent or any legal authority to do so.  Docket Nos. 152 at pp. 2-3, 158 at pp. 6-7.

As an initial matter, Flute does not have a constitutional right to totally accurate transcripts of his criminal proceedings.  Tedford v. Hepting, 990 F.2d 745, 747 (3d Cir.), cert. denied, 510 U.S. 920 (1993); see also Hampton v. Segura, 276 Fed. Appx. 413, 415 (5th Cir. 2008).   His constitutional rights are violated only if there are inaccuracies in the transcripts that adversely affect the outcome of his criminal case.  Tedford, 990 F.2d at 747; see also Robinson v. Smyth, 258 Fed. Appx. 469, 471 (3d Cir. 2007) (transcript errors implicate constitutional rights only if they call into question the validity of appellate review); United States v. Carrillo, 902 F.2d 1405, 1409 (9th Cir. 1990) (where a court reporter failed to produce a complete transcript of the trial proceedings "some prejudice to the defendant must occur before reversal will be contemplated"); Colyer v. Ryles, 827 F.2d 315, 316 (8th Cir. 1987) (civil complaint for damages frivolous where the plaintiff was not prejudiced by an allegedly altered transcript).

---

[6]Interestingly, Flute tried to use A.F.'s "sobbing" and being "taken out of the courtroom" to his advantage in closing argument, see Closing Arg. Tr. 25-26, and even sobbed himself, while testifying on direct examination, see T. Tr. 359.

21

The Court has reviewed the exhibit Flute attached to his §2255 motion, setting forth the alleged transcript alternations, see Docket No. 137-9, -10, and after doing so, believes that the matters complained of are not alterations at all (but mistakes in Flute's recollection as to what was said or occurred) [7], are not material, did not prejudice him in his trial or appeal[8] and/or cause him some other recognizable harm. His resort to intensifiers such as "profound" and "extreme", see id. at 137-9, do not create the requisite materiality, prejudice or injury to state a constitutional or statutory claim for relief under §2255. See Forte v. Sullivan, No. 91-2235, 1992 WL 137509 at *2 (1st Cir. Jun. 18, 1992).

## XVI.

Flute also claims that the trial court had no subject matter jurisdiction over him and that his convictions were illegal and "null and void." Docket No. 156 at pp. 9-10. This claim is frivolous.

In 1885, Congress passed the Indian Major Crimes Act (MCA) in response to the Supreme Court's decision in Ex Parte Crow Dog, 109 U.S. 556 (1883) holding that, under

---

[7]Flute's recollections regarding statements and events, including their chronology, do not trump the court reporters' certifications, contained at the end of the trial and closing argument transcripts, T. Tr. 421, Closing Arg. Tr. 37, that the transcripts are "true and complete" ones of the "proceedings had." See United States v. Hoenig, No. CRIM 402-CR-035-Y, CIV 404-CV-770-Y, 2006 WL 2993262 at *2 (N.D. Tex. Oct. 18, 2006); see also United States v. Rogers, No. 95-1519, 1997 WL 543365 at *2 (10th Cir. Sept. 3, 1997) (dismissal of §2255 motion, without an evidentiary hearing, was proper where only evidence to support claim that trial transcript was altered was "recollection" of co-defendant that certain testimony had been omitted), cert. denied, 522 U.S. 1052 (1998))

[8]The jury which convicted Flute did so based on the evidence it saw and heard, not the written transcript of the trial – which, of course, was not prepared until well after the trial was over. This means that for a constitutional violation to have occurred, there would have to be inaccuracies in the transcript that were substantial enough to call into question the validity of the appellate process. There are not, especially given the strong evidence of Flute's guilt. Tedford, 990 F.2d at 747-48.

the statutory scheme at the time, federal courts had no jurisdiction over the murder of an Indian by another Indian on a reservation.[9]  In its present form, the MCA states in pertinent part as follows:

> (a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, . . . a felony under chapter 109A [relating to sexual abuse], incest . . . shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

> (b) Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

18 U.S.C. §1153.

The offenses in the MCA are defined in the Federal Criminal Code except, as relevant here, incest.  That offense is defined by reference to state law, and in particular, SDCL 22-22-1(6) (1994) and 25-1-6 (1994).

The MCA is supplemented by a jurisdictional statute, 18 U.S.C. §3242, which provides that Indians prosecuted under the MCA "shall be tried in the same courts, and in the same manner, as are all other persons committing such offenses within the exclusive jurisdiction of the United States."  Section 3242 thus makes clear that MCA prosecutions are subject to the same procedures as any other federal criminal case.

---

[9]The Supreme Court later upheld the constitutionality of the MCA in United States v. Kagama, 118 U.S. 375 (1886), and at least one federal court has, since then, rejected a claim that Congress exceeded its authority under the Indian Commerce Clause when it enacted the MCA, see United States v. Lomayaoma, 86 F.3d 142, 144-46 (9th Cir. 1996).

In this case, the trial court had jurisdiction, under the MCA, over the crimes for which Flute was convicted. United States v. Jones, 440 F.3d 927, 929 (8th Cir.) (per curiam) (aggravated sexual abuse), cert. denied, 549 U.S. 855 (2006); United States v. Carter, 410 F.3d 1017, 1020, 1024-25 (8th Cir. 2005) (sexual abuse of a minor and incest); see also United States v. Roberts, 185 F.3d 1125, 1137-38 (10th Cir. 1999) (aggravated sexual abuse, sexual abuse and abusive sexual contact), cert. denied, 529 U.S. 1108 (2000); United States v. Torres, 937 F.2d 1469, 1471 (9th Cir. 1991) (aggravated sexual abuse of a child), cert. denied, 502 U.S. 1037 (1992); United States v. Demarrias, 876 F.2d 674, 675-77 (8th Cir. 1989) (abusive sexual contact with a child).  Flute's claim is no less nugacious than the federal jurisdiction claim that the District Court earlier passed on and rejected.  See Flute, 2008 WL 649139 at *13.

## XVII.

A movant is required to obtain a certificate of appealability (COA) from a district or circuit judge before appealing from the final order entered in a §2255 proceeding.  28 U.S.C. §2253(c)(1)(B).  A district court is authorized to determine a COA if the movant has made a substantial showing of the denial of a constitutional right.  §2253(c)(2); United States v. Lambros, 404 F.3d 1034, 1036 (8th Cir.), cert. denied, 545 U.S. 1135 (2005); Garrett v. United States, 211 F.3d 1075, 1076 (8th Cir.) (per curiam), cert. denied, 531 U.S. 908 (2000). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently or the issues deserve further proceedings." Garrett, 211 F.3d at 1077; Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998).

Having carefully reviewed the record, the Court is convinced that Flute cannot satisfy the standard and make the requisite "substantial showing" with respect to any of his claims. None of them come even close to running afoul of the Constitution and for this reason, a COA should be denied.

## XVIII.

Based on the foregoing findings of fact and legal discussion and pursuant to §636(b) and Rule 8(b) of the §2255 rules, it is hereby

RECOMMENDED that Flute's remaining claims for relief, addressed herein, and/or not already decided in the District Court's March 10, 2008 Opinion and Order, Docket No. 142, be denied in all respects. It is further

RECOMMENDED that Flute's motion under §2255 to vacate, set aside or correct sentence by a person in federal custody, Docket No. 137, be dismissed on the merits and with prejudice. It is further

RECOMMENDED that Flute's additional motions, now pending and found at Docket Nos. 138, 145, 146, as well as his objections, filed at Docket Nos. 156, 158, be denied and overruled, respectively. It is further

RECOMMENDED that a COA, if one is sought by Flute, be denied as to all issues and claims raised in his §2255 motion and otherwise.

Dated this *10th* day of December, 2008, at Pierre, South Dakota.

**BY THE COURT:**

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

**ATTEST:**
**JOSEPH HAAS, CLERK**
**BY:** _____
                    **Deputy**
**(SEAL)**

## NOTICE

Failure to file written objections to the foregoing Report and Recommendations within 10 days from the date of service shall bar an aggrieved party from attacking the Report and Recommendations before the United States District Judge assigned to review the case. See §636(b) and 8(b) of the §2255 Rules.